AO91 (Rev. 5/85) Criminal Complaint AUSA TAMEN

# United States District Court

SOUTHERN _____ DISTRICT OF _____ FLORIDA

UNITED STATES OF AMERICA

v.

ESNEL JEAN

(Name and Address of Defendant)

FILED by _____ D.C.
AUG 1 4 1996
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

**CRIMINAL COMPLAINT**

CASE NUMBER: 96-3279-Bandstra

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **March 28, 1996** in **Dade** county, in the **Southern** District of **Florida** the defendant(s), (Track Statutory Language of Offense) did knowingly and willfully move or travel in interstate or foreign commerce with the intent to avoid prosecution in the State of Florida for the crime of three counts of first degree murder;

in violation of Title **18:** United States Code, Sections **1073**.

I further state that I am a(n) **Special Agent** and that this complaint is based on the following facts:
  Official Title

See Attached Affidavit

Continued on the attached and made a part hereof: [x] Yes  [ ] No

Signature of Complainant JEFFREY FAVITTA
FEDERAL BUREAU OF INVESTIGATION
AUGUST 12, 1996

Sworn to before me and subscribed in my presence,

8/13/96 _____ at  MIAMI, FL.
Date                                    City and State

TED. E. BANDSTRA
UNITED STATES MAGISTRATE                    T.E.B.
Name & Title of Judicial Officer           Signature of Judicial Officer

# AFFIDAVIT

Jeffrey Favitta, being first duly sworn on oath, deposes and states as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and presently assigned to the Miami, Florida, Division of the FBI. I have been so employed since 1983.

2. This affidavit is submitted in support of my application for a criminal complaint charging Esnel Jean, with traveling in interstate commerce from Miami, Florida, with intent to avoid prosecution for a felony under the laws of the State of Florida.

3. All of the information contained in this affidavit is the result of either my own personal observations and investigations, or has been provided to me by other law enforcement authorities, whom I believe to be reliable.

4. By letter dated July 11, 1996, addressed to the United States Attorney's Office, Miami, Florida, Katherine Fernandez Rundle, State Attorney, Eleventh Judicial Circuit, Dade County, Florida, requested the assistance of the FBI under the Unlawful Flight To Avoid Prosecution (UFAP) statute, Title 18, United States Code, Section 1073, to locate and apprehend Esnel Jean, who is being sought by the County of Dade, State of Florida, for the felony charge of First Degree Murder (3 counts), in violation of Florida State Statute 782.04(1).

5. On June 24, 1996, an arrest warrant was issued by Circuit Court Judge Amy N. Dean, Eleventh Judicial Circuit, Dade County, Florida, charging Esnel Jean with three counts of First Degree Murder in the deaths of his wife Wilda Pierre, her son Evans Pierre, and daughter Merlina Juste. On March 29, 1996, all three victims were discovered by detectives from the North Miami

Police Department, at their residence, 710 Northeast 145th Street, North Miami, Florida. The bodies of the victims were discovered in the garage of the residence entombed in a concrete vault type structure (crypt). Detectives were unable to locate Esnel Jean on the date the victims were discovered, nor did he make any attempt to contact the police.

6. Since the issuance of the arrest warrant for Jean's arrest, he has avoided apprehension by the North Miami Police Department and the Violent Crimes/Fugitive Task Force of the FBI, and remains at large. More particularly, FBI agents have learned through investigation and interview that Jean has not returned to his residence in North Miami, Florida, and has not been observed in the South Florida area since this incident forming the basis of the State prosecution.

7. On March 30, 1996, Detective Anthony Ojeda, North Miami Police Department, interviewed Wagner Leonard, an acquaintance of Jean's, who advised that on March 28, 1996, he personally drove Jean to Miami International Airport (MIA) for the purpose of boarding an outbound flight to Haiti. Leonard stated that Jean appeared nervous during the trip to the airport and Jean stated that he would be okay once the flight landed in Haiti. Leonard dropped Jean off at the boarding terminal of MIA and Jean was in possession of personal luggage. Detective Ojeda confirmed through review of the Halisa Airlines passenger flight manifest that Jean did in fact board the aircraft. Additionally, on March 30, 1996, Leonard, in the presence of Detective Ojeda, telephonically spoke with Jean in Haiti at a telephone number provided by Jean prior to his departure.

8. On April 1, 1996, Leonard was advised by his brother, Pierre Leonard, who resides in Haiti, that he had personally spoken to Jean in Haiti on March 31, 1996.

9. Jean is described as a black male, date of birth December 24, 1957, 5 feet 7 inches tall, approximately 160

pounds, black hair, brown eyes, Social Security Account Number 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.

10. The Dade County State Attorney's Office has indicated that it will pursue extradition from any location within the United States once Jean is apprehended and will further bear all expenses arising therefrom.

11. Based upon the above, your affiant has probable cause to believe that Esnel Jean has fled the State of Florida to avoid prosecution for First Degree Murder (3 counts), in violation of Florida State Statute 782.04(1), and that he is currently residing outside the borders of Florida.

Affiant further sayeth naught.

_____
Special Agent Jeffrey Favitta
Federal Bureau of Investigation


Sworn and subscribed this __13__ day August, 1996.

_____
United States Magistrate